## MUTUAL SUPPLY CO. *v.* UNITED STATES

**No. 6809.**—Invoice dated Yokohama, Japan, August 31, 1939.
Certified September 1, 1939.
Entered at San Francisco, Calif., September 21, 1939.
Entry No. 2810.

(Decided January 27, 1947)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks, Richard H. Welsh, James F. Donnelly, Daniel I. Auster*, and *Samuel D. Spector*, special attorneys), for the defendant.

MOLLISON, Judge: The plaintiff herein on or about September 21 1939, imported from Japan into the port of San Francisco certain canned clams. Appraisement thereof was made on the basis of American selling price, as provided in section 402 (g) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (g)), by virtue of the proclamation of the President under the provisions of section 336 of the said tariff act (19 U. S. C. 1940 ed. § 1336), which proclamation was issued May 1, 1934, and which is reported in T. D. 47031, 65 Treas. Dec. 736.

Section 336 of the Tariff Act of 1930, which is captioned "Equalization of Costs of Production," is commonly known as the flexible tariff provision of the tariff act. The portions thereof pertinent to this case are quoted in the margin.[1]

[1] SEC. 336. EQUALIZATION OF COSTS OF PRODUCTION.

(a) CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission * * * shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. * * * The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. * * *

(b) CHANGE TO AMERICAN SELLING PRICE.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 (g)) of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. * * *

(c) PROCLAMATION BY THE PRESIDENT.—The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

It appears that under authority of section 336, *supra,* an application was made early in 1932 to the Tariff Commission for an increase in the duty on all canned clams, and that in response thereto the commission instituted an investigation of the differences in the costs of production of canned clams in the United States and in the principal competing countries. After due public notice, a hearing was held, and interested parties were given opportunity to be present, to produce evidence, and to be heard as required by law. Thereafter, the commission made a report to the President of the results of its investigation, stating, among other things, that it found that the differences in costs of production could not be equalized by increasing the rate of duty within the limit prescribed by section 336 (a), and specifying the retention of the tariff act rate of 35 per centum ad valorem *based upon the .American selling price as defined in section 402 (g)* to be necessary to equalize such differences. The President subsequently approved the change in basis of value specified in the commission's report by the proclamation referred to above. No question was raised in this proceeding concerning the regularity of the actions of the commission or of the President.

As has been stated, upon the importation of the canned clams at bar, the appraiser at the port of San Francisco made an appraisement thereof based upon the American selling price formula set out in section 402 (g) of the tariff act, which is quoted in the margin.[2] In due course the present appeal for reappraisement was filed.

The position of the plaintiff is that the canned clams at bar should be appraised on the basis of export value as defined in section 402 (d), its contentions being that the imported canned clams were not like or similar to the domestic canned clams which were used by the appraiser in determining the American selling price, or, alternatively, if the articles be found to be like or similar, that the domestic article did not meet the requirements of section 402 (g) in that it was not "freely offered for sale for home consumption to all purchasers." As a further alternative, it is contended that there was no definite price at which the domestic article was freely offered for sale, and that with respect to certain of the merchandise, the burden was on the defendant to establish the American selling price, which it failed to do.

---

[2] SEC. 402. VALUE.

*      *      *      *      *      *      *

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

A reading of the proclamation of the President and of section 336, *supra*, indicates that after 30 days from the date of the proclamation it was required that the assessment of duty on imported

\* \* \* clams other than razor clams \* \* \* packed in airtight containers \* \* \*

was to be based upon the American selling price of

\* \* \* clams other than razor clams \* \* \* packed in airtight containers, manufactured or produced in the United States.

There is no question but that the imported merchandise consists of clams other than razor clams, packed in airtight containers. Hence, at first glance, it would seem to come within the purview of the proclamation making mandatory assessment on the basis of American selling price and upon no other basis. Reflection, however, leads to the conclusion that in order that the terms of the Presidential proclamation might apply to the assessment of duty on imported canned clams, it was necessary that *at the time of exportation of the imported clams* the conditions of the American selling price formula be satisfied by a domestic article like or similar to the imported article. If there was no domestic article fulfilling those statutory terms, then there could be no American selling price to apply to the imported article.

If this should be found to be the situation, it must be held that the imported article is not within the purview of the proclamation, for, in order to avoid absurd or impossible results it must be considered that the proclamation applies only to such imported articles as have domestic counterparts fulfilling the American selling price formula. For example, it may well be that in a given case the American selling price formula conditions were fulfilled at the time of investigation by the Tariff Commission and of consideration by the President, but it may subsequently develop that for legal or factual reasons the domestic article no longer fulfills the American selling price requirements. Of course, if the imported article is not within the purview of the proclamation, then its valuation for duty purposes is governed by the ordinary value provisions of the statute, namely, section 402 (c) to (f), inclusive. See *Mutual Supply Co.* v. *United States*, 5 Cust. Ct. 614, Reap. Dec. 5062, and cases therein cited.

With the foregoing observations in mind, inquiry in this case must be directed along two channels, viz, whether at the time of exportation thereof the imported canned clams were like or similar to domestic canned clams, and, if so, whether the domestic article fulfilled the requirements of the American selling price formula.

The imported articles, samples of which are before me, consist of clams packed in two sizes of tins, viz, cans containing 9 ounces of clam meat and cans containing 4½ ounces of clam meat. The clams

are what are known as "hokki" or "hokkigai" clams (evidently the Japanese name), and the tins are of the flat, round type, bearing the brand name "Kasco." The customs examiner who passed the merchandise, and whose returns were approved by the appraiser, was called to the stand and testified that he made his returns of value of the merchandise herein based upon the American selling price of canned clams known· as whole butter clams packed in the State of Washington by four canners, the principal one being Guy P. Halferty.

There is no doubt but that the hokkigai and the whole butter clams are different species of clams, the former being scientifically known as *spisula* and the latter as *saxiduomuous*, but the latter was evidently selected by the appraiser as being the domestic. commercial article most similar to the hokkigai.

It appears that the whole butter clam packed by American producers was put up in tall cans containing 8 ounces of clam meat to the can. It was, nevertheless, adopted by the appraiser as being like or similar to the imported clam. In view of the fact that both the domestic and imported articles in the larger sizes were packed 4 dozen tins to the case, it would seem that the case of imported canned clams contained 48 ounces, or the contents of 6 eight-ounce cans, more than a case of the American product. It is, however, conceded by the plaintiff in the brief filed in its behalf that if it be found that the clams are otherwise like or similar the difference in weight of the cans is immaterial.

The appraiser adopted as the American selling price for the 9-ounce imported hokkigai clams a value of $7 per case of 4 dozen tins, less 1½ per centum cash discount, which was said to represent the American selling price of the 8-ounce size of canned clams packed by Mr. Halferty. The 4½-ounce imported hokkigais were appraised at $7.90, less 1½ per centum cash discount, per case of 8 dozen tins, also said to be on the basis of a similar article packed by Mr. Halferty. It later developed that at the time of exportation of the imported merchandise neither Mr. Halferty nor any of the other American canners called as witnesses, packed or offered for sale clams in the 4½-ounce size, but evidence was offered for the purpose of establishing the price which three of such canners would have been willing to receive for that type of merchandise in accordance with the alternative formula set out in section 402 (g), *supra.*

The question of similarity for valuation purposes has been before this court and our appellate court many, many times. No purpose would be served by reviewing all of the decisions here, and if there is a rule to be derived from a study of them, it is that expressed by the Court of Customs and Patent Appeals in the case of *Scharf Bros. Co.*

*(Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, T. D. 43089, wherein it was said:

\* \* \* This court has long recognized the difficulty in making a hard and fast definition for the word "similar" which will always be a safe guide to customs officials in determining value. \* \* \*

What constitutes similar goods must be determined from the facts relating to the particular goods in each case. Some of these facts may be significant and some insignificant, and what is significant in one case may not be in another. For example, the question of color might be of major importance in determining the similarity of signal lamps, whereas it would not be a material consideration in determining the similarity in lathes. The fact that the compared goods are not identical suggests that differences exist, but it is not the mere existence of the differences, but the relative significance of them that is the guiding factor.

Plaintiff's position as to the dissimilarity of the domestic whole butter clam and the imported hokkigai clam is based upon evidence indicating that the imported and domestic products differ in form, color, odor, taste, materials, and use, and that they are not commercially interchangeable.

I take it that the differences as to form and materials referred to by the plaintiff relate to the fact that the domestic product seems to have more of the whole clam present than does the imported product, some parts of which have been removed. There is nothing in the record to show the significance of this fact, and none of the witnesses seemed to consider it in making comparisons of the products from the trade standpoint.

Concerning commercial interchangeability, there is no doubt but that if two articles are commercially interchangeable, it is strong evidence of similarity, but the reverse is not necessarily true. The value of commercial interchangeability as a determinant of similarity for tariff purposes was treated by our appellate court in *United States* v. *Thomas & Co.*, 21 C. C. P. A. 254, T. D. 46788, as follows:

\* \* \* Whether goods sold in the foreign market are similar to those imported cannot always depend upon whether the foreign goods would be accepted as a compliance with an order by the user of the imported goods. That test might require that the goods be identical and the requirement of the statute is only that the goods be similar. \* \* \*

It does appear, however, from the evidence that the color, odor, and taste of the hokkigai are different from those of the whole butter clam. These differences become particularly significant in view of the testimony of the witness Guilford at page 218 of the record as follows:

Q. Do you know what the consumers of clams require, that is, what things they look for?

\*      \*      \*      \*      \*      \*      \*

A. The consumers look, curiously enough, first for color, and then for cleanliness, and last of all, strange as it may seem, look for taste.

There does not seem to be any question but that the trade prefers clams white in color. The evidence shows that the hokkigai has a pink color in the foot or digger, which constitutes a rather large portion of the clam as canned. One of plaintiff's witnesses, a scientist with some commercial experience, testified that identical clams are available on domestic shores but are not canned because of the pink color of the foot. Opposed to this is the testimony of several of defendant's witnesses, men of experience in packing and selling domestic clams, to the effect that the color of the hokkigai foot would, in their opinion, not be objectionable from a commercial standpoint. This latter testimony, however, seems to be largely conjecture, for it appears that the experience of these witnesses with clams of the hokkigai type was extremely limited.

Whether because of the aforementioned differences in color, odor, and taste, or for other reasons, it appears from the record that the canned hokkigai clams were almost exclusively, if not entirely, sold in stores catering to the trade of persons of Japanese descent and used in the preparation of Japanese dishes, while the whole butter clam was sold in stores catering to the trade of occidentals and used in the preparation of American dishes and not of Japanese dishes. While in a broad sense both were used as food and hence were to that extent similar, it must be remembered that we are here seeking to determine whether such a degree of similarity existed between them that one might be used as a standard of comparison which would indicate the value of the other within the definitions of value found in the statute.

Government counsel in the brief filed on behalf of the defendant stated that it is a universally known fact that "clams are clams," arguing that all clams are similar and differ only in degree of excellence. It is also well known that clams are usually bought by the trade and by consumers under names which indicate source or variety, such as "cherrystone," "little neck," etc., demonstrating thereby that elements of preferability or desirability, doubtless with reference to flavor and appearance, are connected with each such name.

It is my view that in comparing two foodstuffs, particularly those which may be classed as delicacies, peculiarities of taste, odor, and appearance are extremely important and have a vital bearing on the value of each of the items in question. I am satisfied that the differences between the imported hokkigai and the domestic whole butter

clams are so significant as to preclude a finding of similarity for the purposes of the application of the Presidential proclamation and the provisions of section 402 (g).

It will be noted that I have found the imported and domestic articles not to be "similar," but that I have not referred to the question of whether they were "like." These two words are found in section 336, and the context indicates that they should be applied in the comparison of domestic articles with imported articles for valuation purposes under section 402 (g). When dictionary definitions of the two words are compared it will be seen that "like" indicates substantial identity, or at least a closer approximation to sameness than does the word "similar." Thus, Webster's New International Dictionary (2d ed., 1945) defines the adjective "like" in the following manner:

Having the same, or nearly the same, appearance, qualities, or characteristic * * *.

Specif. * * * b. Closely resembling its original * * *.

while "similar" is defined as—

Nearly corresponding; resembling in many respects; somewhat like; having a general likeness * * *.

Since the differences existing between the imported and domestic articles in this case are such as would bar the former from the category of being "similar" to the domestic article, it follows that it is also outside the scope of the term "like."

Having found that the imported canned clams at bar are not like or similar to domestic canned clams, I hold that they are not within the purview of the Presidential proclamation published in T. D. 47031, and that their valuation for tariff purposes is governed by the ordinary value provisions of the statute.

At page 181 of the record it was stipulated by counsel for the parties—

* * * that the invoice value of the merchandise covered by the appeal, namely, the canned clams, represents the export value as defined in Section 402, and that there was not a higher foreign value for such or similar merchandise at the time of exportation.

Accepting this stipulation as a stipulation of fact, I hold that export value as defined in section 402 (d) of the Tariff Act of 1930 is the proper basis of value for the canned clams in question, and that such export values are the invoice unit prices.

Judgment will issue accordingly.