(Reap. Dec. 9727)

GEORGE S. BUSH & CO., INC. *v.* UNITED STATES

Entry No. 3176, etc.

(Decided June 28, 1960)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* and *Hadley S. King* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff* and *Daniel I. Auster,* trial attorneys), for the defendant.

WILSON, Judge: These appeals for reappraisement involve the value, for duty purposes, of certain clams, packed in airtight containers or cans, weighing with their contents 10 ounces net weight, or 5 ounces drained weight each, commonly known as baby clams, which were imported from Japan during the period from November 1953 through June 1954 (R. 2). Shells of certain clams which had been growing in American waters and which clams were alleged to be identical to the imported baby clams were received in evidence as plaintiff's collective illustrative exhibit 1 (R. 18).

The clams in question were appraised in accordance with a Presidential proclamation, dated May 1, 1934, T.D. 47031, upon the basis of the American selling price, section 402(g) of the Tariff Act of 1930, as amended, of a clam commonly known as a soft-shell clam, the product of New England, and which was packed in Portland, Maine, in airtight containers, the cans weighing with their contents 10 ounces each, the stipulated American selling price for the involved period for said merchandise being $4.75 per dozen cans, less 1½ per centum cash discount, less one-fourth of 1 per centum swell allowance, except for the merchandise covered by the last entry herein, which was given only one-tenth of 1 per centum swell allowance (R. 2-3). Shells of the so-called soft-shell clam, obtained from the clam or

405

shellfish division of the Washington State Health Department, were received in evidence as plaintiff's collective illustrative exhibit 2 (R. 22).

Section 402(g) of the Tariff Act of 1930, as amended, states:

AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

The plaintiff contends that there were on the market canned whole "little neck" clams "more like or similar" to the imported "baby" clams, these whole little neck clams being canned in the United States and sold by Iwerson Canning Co., of Bellingham, Wash., and that, accordingly, the price of said whole little neck clams should be the proper price for appraising the imported clams under the American selling price formula. Shells of certain hard shell so-called "little neck" clams found in American waters were also received in evidence (plaintiff's collective illustrative exhibit 3) (R. 25).

No shells or clams from Japan were offered in evidence.

Counsel for the respective parties stipulated that, for the period October 1953 through March 1956, based upon the sales of Iwerson Canning Co., of Bellingham, Wash., the price at which canned whole little neck clams produced in the United States, packed twenty-four 10-ounce tins per carton, and the same as plaintiff's collective illustrative exhibit 3, was $7.50 per carton, less 1½ per centum cash discount, less one-tenth of 1 per centum swell allowance, such price including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for delivery, in the principal market of the United States, in the ordinary course of trade, and in the usual wholesale quantities in such market.

Two witnesses testified on behalf of the plaintiff, Mr. Joseph Lobberegt, president of Fan-Sea Foods, Inc., importer of tuna fish, oysters, clams, smoked items, and smoked fish, testified that he has been familiar with the type of clam imported for a period of about 10 years, having "dug hundreds and hundreds of pounds" of such clams in Comando Island in this country and stated that this type clam was known as the "little neck" (R. 4). The witness testified that the market price for these domestic little neck clams during the involved period varied between $5 and $5.50 a case of 24's of 7 ounce,

and $9 for a case of 24's on the 16-ounce can in the wholesale market, and that the discounts offered for such type clams were 1½ per centum cash discount and one-tenth of 1 per centum swell allowance (R. 6).

On cross-examination, Mr. Lobberegt testified that while he had not seen, in Japan, the canning operations of clams such as those imported, he had seen samples of that type clam; that, upon cutting them open, he had observed that these canned clams "were identical clams that we used to dig out at Comando Island" (R. 7). The witness further testified that he had seen the shells obtained from little neck clams canned in the United States and that such shells were like plaintiff's collective illustrative exhibits 1 and 3 (R. 43).

Plaintiff's second witness was Albert S. Young, supervising sanitarian of the Seattle King County Health Department, an agency concerned with "the environmental sanitation of the North District of Seattle and King County," having to do with water supplies, eating facilities, and other health problems. The record discloses that he had done graduate work at the University of Washington in zoology and that he had been a teaching fellow in such institute in marine embryology, in connection with which subject he had acquired knowledge of clams (R. 9–10); that, subsequently, by reason of his employment by the State of Washington in the pollution control commission, he had become familiar with the various types of clams (R. 11–12). The record further discloses that Mr. Young had become familiar with the hard shell little neck clams which he identified as belonging to the family of hard clams usually known as the "venus" clam (R. 13–14); that he was also familiar with the soft shell clam found in New England as well as in Puget Sound; and that, for at least 10 years, he had been familiar with the baby clam imported from Japan, which he stated was also known as the "venus" clam (R. 24).

Mr. Young further testified in substance that plaintiff's collective illustrative exhibits 1 and 3 are alike, in that they both have radial lines (R. 26)—the shells are sturdy, hard, and fat. On broadside, they are heart shaped—"where they get the name 'venus' "—"They are a hard shell and this is characteristic of what we call little neck clams. They can get the whole clam back into the shell and close it tightly" (R. 28), whereas the shells of the so-called soft clam gape when put together. He stated that the soft clam has a large neck in proportion to its body, the shape of the meat being elongated, and that the soft clam is, therefore, not as fat as the other types referred to, which are round and more plump. Plaintiff's witness also testified that the meat on the imported baby clams is "very similar" to that of the soft clam used as the basis of appraisement, but, subsequently, stated that the meat on the soft clam is tougher than on the baby clam (R. 30) and that the hard shell little neck clam is more tender than the soft clam (R. 32).

On cross-examination, Mr. Young testified that it "would be rather difficult" to tell the various differences previously described between the type of clams, heretofore referred to, merely by looking at cans of clams on a store shelf (R. 33). When questioned by Government counsel as to whether or not the little neck clam produced in this country was identical with the little neck clam from Japan, plaintiff's witness replied "Possibly" (R. 37).

The most recent case on the issue here presented for determination is that of *Geo. S. Bush & Co., Inc.* v. *United States*, 43 Cust. Ct. 577, Reap. Dec. 9563, decided December 17, 1959, now on review. The merchandise there involved consisted of certain rubber-soled shoes with canvas uppers, which were appraised on the basis of the American selling price of "like" or "similar" domestic shoes. The court, in the *Bush* case, *supra*, after considering testimony concerning the relative similarity between certain domestic shoes upon which appraisement of the merchandise was based and certain other domestic shoes claimed more like or similar to the product there imported, at page 582, stated:

All that is required for a valid appraisement of imported merchandise on the basis of American selling price is that the domestic article or articles upon which appraisement is predicted be "like or similar" to the goods imported. If the merchandise used by the appraiser for valuation purposes meets that test, then, the appraiser's action must be upheld. Whether or not one domestic article is "more" similar to an imported article than another domestic article used as the basis of appraisement must, of course, be determined by the record in each particular case. Of course, if there is such a disparity between the domestic article used as the basis of appraisement and the imported goods so as to render the designation "similar" inapplicable to the domestic article, then, the appraiser's action in using such domestic article for valuation purposes on the basis of American selling price is improper. * * *

The imported clams do not have to be identical with the domestic clams used as the basis of appraisement in order to render them subject to appraisement on the basis of American selling price. *United States* v. *Japan Import Co., Inc.*, 2 Cust. Ct. 926, Reap. Dec. 4568. It is sufficient for appraisement of the imported clams on the basis here made that the imported goods be "like" or "similar" to the goods used by the appraiser in ascertaining value. *Japan Import Co.* v. *United States*, 24 C.C.P.A. (Customs) 167, 175 T.D. 48642.

Plaintiff, in its brief, directs our attention to the holding of the court in *Hoyt, Shepston & Sciaroni* v. *United States*, 38 Cust. Ct. 741, A.R.D. 74, involving certain baby clams imported, as here, from Japan. While stating that it was not concerned with comparative similarity and that it did not undertake to state any views in connection therewith, the court, in the *Hoyt, Shepston* case, *supra*, held, page 748, that section 402(g), *supra*, requires the appraiser to make a return of value on the basis of a domestic article, like or similar to the imported product, and that, in so doing, he must first explore the pres-

ence of a like article before choosing a similar one. The court therein, at page 746, stated:

When, as here, the proclamation is couched in general terms, to wit, "clams * * *, and clams in combination with other substances * * *, packed in airtight containers," it is not to be supposed that the appraiser may select any canned clam or clam product which may happen to have an American selling price, without regard to its comparability with the imported merchandise. Some degree of identity would necessarily seem to be required, and the courts have so interpreted the American selling price provision in its relationship with section 336, *supra*, and any proclamation issued in accordance therewith.

In the case at bar, the requirements of the statute on the matter of the comparability of the domestic clams here used as the basis of appraisement with the clams imported, have, in my opinion, been satisfied in accordance with the rule of comparability, as above outlined. The appraiser in the present instance did not just select any domestic clams to be used as the basis of appraisement of the imported merchandise, but selected a domestic product which, as the record shows, did have "some degree of identity" with the imported clams. As testified to by plaintiff's witness, the meat of the imported clams and the clams used by the appraiser is "very similar" (R. 30).

In the case of *United States* v. *Mutual Supply Co.*, 20 Cust. Ct. 418, Reap. Dec. 7578 (affirmed, *Mutual Supply Co.* v. *United States*, 38 C.C.P.A. (Customs) 44, C.A.D. 437), reversing the judgment of the single judge in *Mutual Supply Co.* v. *United States*, 18 Cust. Ct. 338, Reap. Dec. 6809, the importer claimed therein that certain imported Japanese "hokkigai" clams were not like or similar to domestic butter clams upon which appraisement was based. In holding that the imported clams and the domestic product were, in fact, like or similar within the meaning of that term, as used in section 336 of the Tariff Act of 1930, the court, in the *Mutual Supply Co.* case, *supra*, after citing the rule for the determination of "similarity," as enunciated in the case of *United States* v. *Wecker*, 16 Ct. Cust. Appls. 220, T.D. 42837, stated, at page 422, as follows:

In its decision the trial court stated that:

Government counsel in the brief filed on behalf of the defendant stated that it is a universally known fact that "clams are clams," arguing that all clams are similar and differ only in degree of excellence. It is also well known that clams are usually bought by the trade and by consumers under names which indicate source or variety, such as "cherrystone," "little neck," etc., demonstrating thereby that elements of preferability or desirability, doubtless with reference to flavor and appearance, are connected with each such name.

While the statements contained in the above quotation may be correct, there is no evidence in this record to that effect, nor does it demonstrate that if a prospective customer enters a store seeking to purchase cherrystone clams and finds there are none, but that little neck clams which will perform the same functions, are capable of the same use, and may be substituted for

cherrystone clams, are available, that the customer would refuse to buy the little neck clams simply because they were not cherrystone clams.

In the above connection, plaintiff's witness Young testified that none of the differences related by him with respect to the Japanese baby clam, the soft shell clam used as the basis of appraisement, and the little neck clams claimed by the plaintiff more like the imported clams would bes evident from looking at a can of clams on a shelf. Thus, for all the present record indicates, the domestic clam used as the basis of appraisement and the imported baby clam might both satisfy a purchaser on the matter of similarity of product and fall within the rule of "similarity," which may be noted by reference to the *Wecker* case, *supra*.

I am further of opinion that the holding of this court in the *Geo. S. Bush & Co., Inc.*, case (Reap. Dec. 9563), *supra*, is controlling in the determination of the question here in issue. Plaintiff, in the case at bar, has not established "dissimilarity" of the imported clams (plaintiff's collective illustrative exhibit 1) to the domestic clams upon which appraisement of the merchandise was based (plaintiff's collective illustrative exhibit 2) under the American selling price formula, so as to render inapplicable to the domestic clams the embracing designation similar. The record discloses, as heretofore indicated by the testimony of plaintiff's witness Young, that with respect to the similarity of the imported baby clam and the soft shell clam the "meat is very similar," although the witness subsequently stated that "the meat is tougher on the soft clam." (R. 30.) Further, while plaintiff's witness Young testified that the most positive identification of clams is made by looking at the shells rather than at the meat (R. 23), no clam from Japan was here offered in evidence. What plaintiff in this record is attempting to compare is a shell collected in American waters (plaintiff's collective illustrative exhibit 1), claimed to be like the imported shells, with another clam shell also collected in American waters (plaintiff's collective illustrative exhibit 3). In my opinion, there has not been a sufficient showing of disparity to warrant a conclusion that the merchandise represented by plaintiff's collective illustrative exhibit 2 is not like or similar, for appraisement purposes based on the American selling price, to the imported merchandise claimed to be represented by plaintiff's collective illustrative exhibit 1. On the whole, plaintiff, in this case, has failed to establish that the domestic product used as the basis of appraisement is not like or similar to the merchandise here imported.

Upon a full consideration of the record before me, I find as facts:

1. That the involved merchandise consists of clams, packed in cans, weighing with their contents 10 ounces net weight, or 5 ounces drained weight each, imported during the period November 1953

through June 1954, the said clams being a product of Japan, commonly known in the United States as baby clams.

2. That, pursuant to Presidential proclamation, dated May 1, 1934, T.D. 47031, such clams were appraised on the basis of the American selling price, section 402(g) of the Tariff Act of 1930, as amended, of a canned soft shell clam packed in Portland, Maine, the said American selling price for the involved period being $4.75 per dozen cans, less 1½ per centum cash discount, less one-fourth of 1 per centum swell allowance, except for the involved merchandise under entry 6980 covered by reappraisement No. 246711–A, which was given allowance of one-tenth of 1 per centum.

3. That the said soft shell clam used as the basis for appraisement is similar to the imported clams.

I conclude as matters of law:

1. That the presumption of correctness attaching to the appraiser's finding of value in each of the appeals herein has not been overcome.

2. That American selling price, as that value is defined in section 402(g) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise here involved.

3. That such statutory value is, in each case, the appraised value.

Judgment will be entered accordingly.