(Reap. Dec. 8767)

JNO. G. McGIFFIN *v.* UNITED STATES

Entry No. J–19

(Decided March 21, 1957)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Richard F. Weeks* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

*Lamb & Lerch* (*David A. Golden* of counsel) as *amicus curiae.*

LAWRENCE, Judge: This appeal for a reappraisement relates to an importation of knee-length rubber boots from Germany, represented by exhibit 1. The boots were appraised at $5.05 per pair, less 2 per centum, packed, on the basis of the American selling price of a "like or similar" domestic article. This action was taken pursuant to a Presidential proclamation, 63 Treas. Dec. 232, T. D. 46158, issued in accordance with provisions of section 336 of the Tariff Act of 1930 (19 U. S. C. § 1336), which changed from the foreign-market value to the American selling price, as defined by section 402 (g) of said act (19 U. S. C. § 1402 (g)), as amended by the Customs Administrative Act of 1938, 52 Stat. 1077, "the basis for the assessment of duty on boots, * * * or other footwear, wholly or in chief value of india rubber, not specially provided for." New York is concededly the principal market for such boots.

Plaintiff, in its brief, contends that the importation should be appraised at $3.50 per pair, the claimed American selling price of a like or similar domestic article.

The appraiser selected as a like or similar domestic article a rubber boot, manufactured by the United States Rubber Co., represented by exhibit 3.

A rubber boot, manufactured by the Beacon Falls Rubber Co., a subsidiary of the United States Rubber Co., and claimed by plaintiff

to be "somewhat similar" to exhibit 1, was received in evidence as illustrative exhibit 2.

Another boot, which was purchased by plaintiff's witness Herman Berner from the Bata Shoe Co., was received in evidence as illustrative exhibit 4. It is this boot which plaintiff claims should be taken for the purposes of appraisement at $3.50 per pair.

It is not disputed that the imported boots are proper subjects of appraisement on the basis of said section 402 (g), as amended, pursuant to the Presidential proclamation above referred to.

Three witnesses were called to testify herein, two on behalf of the plaintiff and one for the defendant.

Plaintiff's first witness, John P. Dattoli, vice president of International Industrial Mills, Inc., the real importer herein, testified at the first hearing of this case in Jacksonville, Fla., that his company was engaged in importing mill supplies, such as rubber boots, shovels, garden shears, and various types of garden tools, and that, in 1946, he became the purchasing agent for a chain of surplus stores.

Having purchased boots for a period of 9 years and based upon his experience and knowledge, it was his opinion that exhibit 2 was far superior in workmanship and material to exhibit 1; exhibit 2 was stronger and more serviceable; exhibit 1 not only had a coarse grade of cotton lining in it, but the outer layer of rubber was thin and light of weight, showing the weave of the fabric; exhibit 2 had a finer woven duck lining.

However, inasmuch as plaintiff, in its brief, contends that the boot represented by exhibit 4 should be accepted as the "like or similar" domestic article and appraised at a value of $3.50 per pair, it is deemed unnecessary to discuss further the comparative merits of exhibits 1 and 2.

At the second hearing of the case in Jacksonville, plaintiff's second witness, Herman Berner, testified that he had been part owner of the Jax Rubber Products Co. since 1946, engaged in the business of dealing in industrial and commercial rubber products, including rubber boots represented by the exhibits before the court. His duties were the management, purchase, and sale of its products. Since 1946, he had purchased and sold some 40,000 to 50,000 pairs of men's rubber boots. He produced a rubber boot (exhibit 4) that he had purchased from the Bata Shoe Co. during the period from May 1 to July 31, 1954, which embraces the date of exportation of the instant merchandise. Berner also produced a price list of the Bata Shoe Co., in effect during the period mentioned, which was received in evidence as plaintiff's exhibit 5, indicating that the price of the boot, represented by exhibit 4, during May, June, and July 1954 was $3.05 a pair; and testified that, if the purchaser paid $3.05 a pair, the Bata Shoe Co. would prepay the freight, but where the purchaser paid only $2.85,

the purchaser paid the freight. He produced seven invoices, showing the price of $2.85 at which his company purchased boots like exhibit 4 from the Bata Shoe Co. They were received in evidence as plaintiff's collective illustrative exhibit 6.

Dattoli was then recalled to the stand and made a comparison of the construction of exhibits 1 and 3, representing the imported boot and the boot selected by the appraiser, respectively. Among other things, he stated that exhibit 3 weighed three-fourths of 1 ounce more than exhibit 1, which indicated to him that there was more material in exhibit 3 to contribute to its wear or protective quality. He referred to the fact that the sole of the boot in exhibit 1 was directly fastened to the upper whereas, in exhibit 3, there was an additional strip, known as foxing, which would give the sole of the boot approximately one-half inch in width for additional support. He also referred to other differences in appearance between exhibits 1 and 3. Reference was made to the narrow strip of rubber across the top as an additional reinforcement in exhibit 1, while exhibit 3 had a much heavier strip of rubber around the top, which added to the durability of the boot. In his opinion, the construction of exhibit 3 gave it greater value than that of exhibit 1, because there was more material to give added support and service.

Dattoli then made a comparison of exhibit 1 with exhibit 4, the latter manufactured by the Bata Shoe Co. In his opinion, there was a much greater similarity between exhibits 1 and 4 than between exhibits 1 and 3. There were differences in the quality of workmanship and in price bracket between exhibits 1 and 3, and exhibit 3 would command a better price than exhibits 1 or 4, because it could render better service.

Defendant called as a witness Vinal N. Hastings, manager of the Product Design and Control Department of the United States Rubber Co. at Naugatuck, Conn. He had been with that company since 1922 in various responsible managerial capacities.

He examined exhibits 1, 2, and 3 which he regarded as approximately the same in rubber material and in workmanship. Based upon his extensive experience in the rubber footwear business, he expressed his opinion that exhibit 1 was similar to exhibit 3.

The problem confronting the court is whether exhibit 1 is like or similar to exhibit 3, as found by the appraiser, or to exhibit 4, as claimed by plaintiff.

While, as above indicated, considerable testimony was introduced designed to establish the similarity or dissimilarity of exhibit 1, the imported boot, to exhibits 3 and 4, depending upon differences in appearance, material, design, construction, and serviceability, and while certain differences in appearance and material are obvious to the court, it becomes unnecessary, in view of the conclusion arrived at

herein, to decide definitely whether exhibit 1 bears a greater similarity to exhibit 4 than it does to exhibit 3.

As previously stated, the price of exhibit 4 is claimed to be established by plaintiff at $3.50. The court is of the opinion, however, that plaintiff has failed to meet all the requirements laid down in section 402 (g) which are necessary to establish the American selling price of exhibit 4. Many years ago, our appellate court announced the doctrine in valuation cases that competent proof must be offered by the appealing party to meet every material issue. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276. As applicable here, it was incumbent upon the plaintiff, in order to establish the American selling price of the importation, to prove, among other things, the price at which a like or similar article manufactured or produced in the United States—in the present case, exhibit 4— (1) is freely offered to sale for domestic consumption to all purchasers, (2) in the principal market of the United States, (3) in the ordinary course of trade, and (4) in the usual wholesale quantities in such market, or (5) the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article. Note section 402 (g), as amended, *supra.*

The record herein fails to establish. the price at which exhibit 4, alleged to be a like or similar article produced in the United States, is freely offered for sale to all purchasers. The evidence is also lacking in proof of the usual wholesale quantities in which that boot is sold in the United States.

Upon this phase of the case, plaintiff's witness Berner was examined as follows:

Q. This price list which is now Exhibit 5 for Identification, is that a price list given by Bata Shoe Company to you as a jobber?—A. That is right.

Q. And the prices listed on this price list are those prices restricted to jobbers only?—A. Well, that price is restricted to jobbers, but that includes freight— we have to pay freight on it.

\*     \*     \*     \*     \*     \*     \*

Q. And this price list was limited only to jobbers?—A. That is correct.

\*     \*     \*     \*     \*     \*     \*

Q. Do you know whether or not anyone could purchase at the price shown on Exhibit 5?—A. No, sir. There is a different price structure, but actually the same thing, because the company will prepay the freight if a different category would buy the boot. A little higher price with the payment of freight would almost amount to the same thing.

The record discloses that plaintiff's witness Berner testified that the price list (exhibit 5) was restricted to jobbers only. Berner further testified that the Bata Shoe Co. gave his company a better price because of the large volume which it purchased.

Since, therefore, there was failure of proof to establish at least the above two elements as necessary links in determining an American selling price of the imported rubber boots different from that found by the appraiser, it logically follows that plaintiff's case is fatally defective.

A basic principle which applies in valuation cases is frequently stated by the courts to be that plaintiff, in order to succeed, must not only prove that the value found by the appraiser is incorrect, but must establish the correctness of its claimed value. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and cases cited.

In the case at bar, it becomes unnecessary to determine whether or not the finding of value by the appraiser is correct, since the court is satisfied that there has been failure to establish any other or different value in accordance with legal requirements.

On the record herein, the court is constrained to find and hold that the value returned by the appraiser is the American selling price of the imported rubber boots, pursuant to said section 402 (g), as amended.

Judgment will issue accordingly.