(Reap. Dec. 9563)

GEO. S. BUSH & CO., INC. *v.* UNITED STATES

Entry Nos. 7460; 4263; 6641.

(Decided December 17, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

*Lamb & Lerch* (*David A. Golden* of counsel) as *amicus curiae*.

WILSON, Judge: These appeals for reappraisement involve the proper dutiable value of certain rubber-soled shoes with canvas uppers, exported from Japan between December 1956 and May 1957 and entered at the port of Seattle. The price categories involve children's sizes 5 through 12, and youths' sizes 12½ through 3.

Appraisement of the merchandise was made on the basis of the American selling price of a "like" or "similar" domestic shoe, pursuant to the provisions of section 402(g) of the Tariff Act of 1930, as amended, at $1.95, less 2 per centum, packed, for children's shoes, sizes 5 through 12, and $2.10, less 2 per centum, packed, for the youths' shoes, sizes 12½ through 3. The appraiser's action was predicated on a Presidential proclamation, 63 Treas. Dec. 232, T.D. 46158.

The appraiser at Seattle used as the basis for his appraisement the selling price of a "like" or "similar" shoe manufactured by the United States Rubber Co. and designated CK 643 or 644 for the children's sizes, and JK 643 or 644 for the youths' sizes, the numbers of the shoes in question referring merely to color (R. 2–5).

The plaintiff herein does not dispute that the proper basis of appraisement is the American selling price of a like or similar domestic-made shoe under section 402(g) of the tariff act, but concedes such basis to be the proper one for valuation purposes. Plaintiff claims, however, that the imported shoes should be appraised on the basis of the American selling price of a shoe made by the Rubber Corp. of California, specifically, that the proper American selling price for the imported shoes in children's sizes 5 through 12 is $1.28, less 2 per centum, packed, and that the proper American selling price for the imported shoes in youths' sizes 12½ through 3 is $1.33, less 2 per centum, packed.

At the hearing, plaintiff introduced and there were received in evidence samples of the imported shoes in children's sizes (plaintiff's exhibit 3; R. 11); samples of the shoes in youths' sizes (plaintiff's exhibit 4; R. 11); official samples from the shipments herein involved (plaintiff's exhibits 5, 6, and 7; R. 12); a sample of a shoe made by the Rubber Corp. of California in the children's sizes 5 through 12, which had been cut through the instep (plaintiff's exhibit 8; R. 13); a sample shoe made by the Rubber Corp. of California in a youth's size (plaintiff's exhibit 9; R. 13–14); a sample of a shoe made by the United States Rubber Co. in a child's size, which is the shoe used by the appraiser as the basis of appraisement for the imported children's shoes (plaintiff's exhibit 1; R. 4); a sample of a shoe made by the United States Rubber Co. in a youth's size, which is the shoe used by the appraiser as the basis of appraisement for the imported youths' shoes (plaintiff's exhibit 2; R. 5); and a price list issued by the Rubber Corp. of California (plaintiff's exhibit 10; R. 20).

The pertinent parts of the statutes herein involved are as follows:

Section 336, Tariff Act of 1930, as amended:

SEC. 336. EQUALIZATION OF COSTS OF PRODUCTION.

(a) * * *

(b) CHANGE TO AMERICAN SELLING PRICE.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as herein before provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. * * *

Section 402(g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

Pursuant to section 336, *supra*, a Presidential proclamation (63 Treas. Dec. 232, T.D. 46158) was issued in accordance with which appraisement of the involved merchandise on the basis of American selling price was made.

The only testimony in this case was that of plaintiff's witness, Mr. David Leander, associated with the firm of Auge & Frese, for whose account the merchandise was imported, a retail department store in Seattle, Wash., as manager of the concern's shoe department for about 3 years. His duties include the buying of both domestic and foreign merchandise (R. 7). The record indicates that Mr. Leander has been handling rubber-soled shoes with canvas uppers made by the Rubber Corp. of California, as well as those made by the United States Rubber Co., in addition to those made by the Japanese exporter. In comparing the shoes upon which appraisement was based to those imported, as well as to the shoes which the plaintiff herein claims should be used on the basis for appraisement of the imported shoes, plaintiff's witness testified as follows:

Q. I would like to direct your attention to Exhibit 2 which is the official exhibit of the U.S. Ked in the youth size and ask you to compare that with Exhibits 4 and 8 and to give or please state to the court how they either are similar or dissimilar with each other?—A. Well, at the first glance I notice the U.S. Exhibit No. 2 has a much heavier, by far much heavier outer sole than the Exhibit No. 4, of the imported shoe. There is quite a bit of difference, looks like at least twice or more of the thickness of the sole. As far as the wraparound the outer sole looks very much the same, a little different design is all. The canvas of the U.S. Ked shoe, which is the sample No. 2, is much heavier in feeling on the hems, stitching is similar, same number of eyelets. The insole, however, in the U.S. Ked shoe is not a cushioned insole. It is made up of the hard block rubber that is used under the insole in the imported shoe, and otherwise is not—that is about the difference of those two. Now, the same differences, of course, apply to the Rubber Corporation shoe, Exhibit No. 8, with the U.S. Exhibit No. 2. And again, the U.S. exhibit essentially has a heavier sole, outer sole, than the Rubber Corporation shoe. And of course the Rubber Corporation shoe has a cushion insole similar to the imported shoe, whereas the U.S. Ked does not. The uppers are very similar with different designs. And the uppers, I believe the canvas uppers on the Ked is a little more superior to that of the Rubber Corporation. Actually, the basic construction of the two shoes are very similar (R. 27–28).

On cross-examination, Mr. Leander testified that he had never manufactured rubber-soled shoes with canvas uppers such as those before the court; that he did not know the composition of the rubber used in the manufacture of such shoes; that he had no experience in manufacturing the canvas used in such shoes; that he could not tell by merely looking at the exhibits at bar which shoes contained the better quality of rubber or which of such shoes had the better canvas (R. 32–34). The record further discloses that plaintiff's witness had never made an analysis of plaintiff's exhibits 1 and 2, the shoes made by the United States Rubber Co., upon which appraisement was based, nor had he ever taken apart any of the shoes here in evidence to determine the quality of the materials used therein. The witness further testified that he had never carried in stock the exact shoes such as plaintiff's exhibits 1 and 2, made by the United States Rubber Co., but that he did carry a United States Rubber Co. type canvas shoe with a rubber sole (R. 35–36), a so-called "U.S. Champion shoe" (R. 37).

The sole issue in this case is whether, for the purpose of appraisement under section 402 (g) of the tariff act, *supra*, the footwear represented by plaintiff's exhibits 1 and 2, which are the shoes selected by the appraiser as the basis for appraisement, are similar to the imported shoes, namely, plaintiff's exhibits 5, 6, and 7. The same statutes as are here involved were before the court in *United States* v. *Japan Import Co., Inc.*, 2 Cust. Ct. 926, Reap. Dec. 4568. The question there for determination was whether certain imported rubber-soled shoes with uppers consisting of a veneer of paper and a lining of cotton were "like or similar" to the domestic shoes, used as the basis of appraisement. It appeared that the latter articles, while also being rubber-soled shoes, contained canvas uppers and differed from the imported shoes in other material respects. The appellate division of this court, in the *Japan Import* case, *supra*, made reference to the holding of the trial court that, in view of the fact that section 402 (g) of the tariff act, defining the American selling price, contains only the word "such" and not the word "similar," therefore, inasmuch as the shoes therein imported were not identical with the domestic shoes, the Presidential proclamation issued under the authority of section 336, *supra*, did not apply to the facts in the case. The court then held that the word "such" in section 402 (g) of the Tariff Act of 1930, which defines American selling price, refers only to the domestic article and not to the foreign competitive article, stating, in this connection, at page 932, as follows:

We therefore hold as a matter of law that the imported shoes in the instant case do not have to be identical with the domestic shoes herein in order to bring them within the purview of the Presidential proclamation herein. However, we are satisfied that the imported shoes herein are not like or similar to the domestic shoes in evidence herein.

In our opinion the word "similar" in the tariff sense means something more than similar in appearance only, which is all that the evidence herein discloses. To be similar within the meaning of section 336 of the Tariff Act of 1930 and the Presidential proclamation promulgated thereunder, requires that the imported and domestic shoes must be made of approximately the same materials and adapted to the same uses. * * *

and, at page 933, the court, in the *Japan Import* case, *supra*, stated:

It is evident from a study of the authorities that the factors to be considered in determining the question of whether an imported article is like or similar to a domestic article which may be taken as the basis of appraisement under said section 336 are (1) similarity of material; (2) commercial interchangeability; (3) adaptability to the same use; and (4) competitive character.

In the above connection, see *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714, involving the interpretation of the words "such or similar" in section 402 of the Tariff Act of 1922.

The plaintiff, in its brief (page 5), states the issue as follows:

The main issue involved herein, however, is whether or not the Appraiser in determining the American selling price of the imported shoes must take the price of a shoe manufactured in the United States which is more similar to the imported rubber soled shoes with canvas uppers or whether or not, as contended by the government, the degree of similarity among American made shoes is of no consequence.

In the above connection, the attention of this court is directed to the holding of our court in the case of *Hoyt, Shepston & Sciaroni* v. *United States*, 38 Cust. Ct. 741, A.R.D. 74.

In the *Hoyt, Shepston & Sciaroni* case, *supra*, the court, while stating that it was not concerned with comparative similarity and did not undertake to state any views in connection therewith, held, page 748, that section 402 (g), *supra*, requires the appraiser, in making a return of value, to first explore the presence of a "like" article before choosing a "similar" one. The court, in the *Hoyt, Shepston & Sciaroni* case, *supra*, at page 746, further stated:

* * * It is the proclamation which describes the merchandise required to be appraised upon the basis of American selling price. It is the appraiser who carries out the terms of the proclamation by finding an American selling price.

When, as here, the proclamation is couched in general terms, to wit, "clams * * *, and clams in combination with other substances * * *, packed in airtight containers," it is not to be supposed that the appraiser may select any canned clam or clam product which may happen to have an American selling price, without regard to its comparability with the imported merchandise. Some degree of identity would necessarily seem to be required, and the courts have so interpreted the American selling price provision in its relationship with section 336, *supra*, and any proclamation issued in accordance therewith.

In *Japan Import Co.* v. *United States*, 24 C.C.P.A. (Customs) 167, T.D. 48642, cited with approval in the *Hoyt, Shepston & Sciaroni* case, *supra*, our appellate court, discussing whether certain imported

rubber-soled, canvas-top footwear was "like" or "similar" to the merchandise used by the appraiser in ascertaining value, at page 175 therein, stated:

Under the proclamation of the President and said section 336(a) and (b), the appraisement of the imported goods was to be made at the American selling price of the domestic article like or similar to imported foreign articles, as defined by said section 402(g). Were the imported goods like or similar to the goods used by the appraiser in ascertaining value? The word "like" has been defined by us in *American Foundation (Inc.)* v. *United States*, 19 C.C.P.A. (Customs) 36, T.D. 44872, by the adoption of the definition of the word, as taken from Webster's New International Dictionary, 1925, as follows:

> Having the same, or nearly the same, appearance, qualities, or characteristics; similar.

The court, in the *Japan Import* case, *supra*, page 176, with respect to the word "similar," stated:

The word "similar" has had frequent attention on the part of this court. We first gave it extended attention in *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714. The words involved in the statute there in issue were "such" or "similar." We reiterated our former conclusion that the word "such" meant "identical," and as to the word "similar," referred to the definition given in Webster's New International Dictionary (1925), as follows:

> *Similar.* a. 1. Nearly corresponding; resembling in many respects; somewhat like; bearing a general likeness.

All that is required for a valid appraisement of imported merchandise on the basis of American selling price is that the domestic article or articles upon which appraisement is predicated be "like or similar" to the goods imported. If the merchandise used by the appraiser for valuation purposes meets that test, then, the appraiser's action must be upheld. Whether or not one domestic article is "more" similar to an imported article than another domestic article used as the basis of appraisement must, of course, be determined by the record in each particular case. Of course, if there is such a disparity between the domestic article used as the basis of appraisement and the imported goods so as to render the designation "similar" inapplicable to the domestic article, then, the appraiser's action in using such domestic article for valuation purposes on the basis of American selling price is improper. I am of opinion that the record in the case at bar establishes that the shoes selected by the appraiser (plaintiff's exhibits 1 and 2) as the basis for his appraisement are similar to the imported shoes (plaintiff's exhibits 5, 6, and 7) and that the appraiser's action in this case must be sustained. There is not such a disparity between the domestic articles and the imported shoes as to negative a finding of "similarity" as applied to the domestic footwear. Plaintiff's witness testified with respect to the United States Rubber Co. shoe (plaintiff's exhibit 2), a type of shoe upon which appraisement of the youth-size shoes were made, and

the shoe manufactured by the Rubber Corp. of California (plaintiff's exhibit 8), claimed similar to the imported youth-size shoes, that "Actually, the basic construction of the two shoes are very similar" (R. 27–28). There is further testimony in the record which establishes that the domestic shoes used by the appraiser as the basis of his appraisement and the imported shoes have in common certain elements of construction and that, for all practical purposes, one type can be used for the other. Furthermore, plaintiff's attempted proof to establish that the domestic shoes were not similar to the imported shoes was considerably weakened by the testimony of its witness on cross-examination that he never manufactured any rubber-soled shoes (R. 32) and that he never broke down the United States Rubber Co. shoe to determine the quality of the materials used therein (R. 34). For the reasons stated, I find and hold that the domestic shoes used herein as the basis of appraisement were "similar," for appraisement purposes, to the shoes here imported.

In view of the finding above noted that the domestic shoes used as the basis of appraisement were "similar" to the imported shoes for valuation purposes, I deem it unnecessary to decide whether on the record here presented the plaintiff has sustained the burden of proof imposed upon it under the statute of establishing an American selling price for the shoes which it claims should be taken as the basis of appraisement (plaintiff's exhibits 8 and 9).

On the record presented, I find as facts:

1. That the involved merchandise consists of rubber-soled shoes with canvas uppers in children's sizes 5 through 12 and youths' sizes 12½ through 3, exported from Japan between December 1956 and May 1957.

2. That the imported shoes in children's sizes 5 through 12 were appraised upon the basis of the American selling price of certain shoes in children's sizes 5 through 12, designated as "Rover" CK 643 and 644, manufactured and sold in the United States by the United States Rubber Co. at $1.95, less 2 per centum, packed.

3. That the imported shoes in youths' sizes 12½ through 3 were appraised upon the basis of the American selling price of certain shoes in youths' sizes 12½ through 3, designated as "Rover" JK 643 and 644, manufactured and sold in the United States by the United States Rubber Co. at $2.10, less 2 per centum, packed.

4. That the domestic shoes manufactured by the United States Rubber Co. (plaintiff's exhibits 1 and 2), which were used as the basis of appraisement, are "similar" to the imported shoes (plaintiff's exhibits 5, 6, and 7) for the purposes of appraisement under section 402(g) of the Tariff Act of 1930, as amended.

I conclude as matters of law:

1. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

2. That the proper basis of appraisement of the merchandise under consideration is American selling price, as such value is defined in section 402 (g) of the Tariff Act of 1930.

3. That such statutory value is, in each instance, the appraised value.

Judgment will be rendered accordingly.