(A.R.D. 126)

GEO. S. BUSH & CO., INC. *v.* UNITED STATES

Entry Nos. 7460; 4263; 6641.

Second Division, Appellate Term

(Decided March 1, 1961)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Hadley S. King* and *Edward N. Glad* of counsel) for the appellant.

*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the appellee.

*Lamb & Lerch* (*David A. Golden* of counsel) as *amicus curiae*.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

FORD, Judge: This application for review of the decision and judgment of the trial court, which was reported in 43 Cust. Ct. 577, Reap. Dec. 9563, covers the appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof. The merchandise consists of certain rubber-soled shoes with canvas uppers exported from Japan between December 1956 and May 1957.

Appraisement of this merchandise was made on the basis of the American selling price of "a like or similar" domestic shoe pursuant to the provisions of section 402(g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, in accordance with a Presidential proclamation, 63 Treas. Dec. 232, T.D. 46158, issued under the authority of section 336 of the Tariff Act of 1930.

The shoes involved herein fall into two categories, those of children's sizes 5 through 12, which were appraised at $1.95, less 2 per centum, packed; and those in youths' sizes 12½ through 3, which were appraised at $2.10, less 2 per centum, packed, both based upon a like or similar shoe produced by United States Rubber Co.

Appellant concedes that American selling price is, in fact, the proper basis of value for this importation but contends that the American selling price of domestic shoes manufactured by the Rubber Corp. of California should be taken as the proper values for the imported shoes on the theory that shoes manufactured by said corporation are more like or similar to the imported shoes than those relied upon by the appraiser.

The cited provisions, effective as of the time of this importation, and said proclamation, insofar as here pertinent, read as follows:

Section 336 of the Tariff Act of 1930 (19 U.S.C. § 1336):

## SEC. 336. EQUALIZATION OF COSTS OF PRODUCTION.

(a) CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this chapter intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(b) CHANGE TO AMERICAN SELLING PRICE.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute, and no such rate shall be increased.

(c) PROCLAMATION BY THE PRESIDENT.—The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

\*       \*       \*       \*       \*       \*       \*

(g) PROHIBITION AGAINST TRANSFERS FROM THE FREE LIST TO THE DUTIABLE LIST OR FROM THE DUTIABLE LIST TO THE FREE LIST.—Nothing in this section shall be construed to authorize a transfer of an article from the dutiable list to the free list or from the free list to the dutiable list, nor a change in form of duty. Whenever it is provided in any paragraph of Subtitle I of this chapter, or in any amendatory act, that the duty or duties shall not exceed a specified ad valorem rate upon the articles provided for in such paragraph, no rate determined under the provisions of this section upon such articles shall exceed the maximum ad valorem rate so specified.

(h) DEFINITIONS.—For the purpose of this section—

(1) The term "domestic article" means an article wholly or in part the growth or product of the United States; and the term "foreign article" means an article wholly or in part the growth or product of a foreign country.

\*       \*       \*       \*       \*       \*       \*

Section 402(g) of the Tariff Act of 1930, as amended, *supra*:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

Presidential proclamation, 63 Treas. Dec. 232, T.D. 46158:

Whereas under and by virtue of section 336 of Title III, Part II, of the act of Congress approved June 17, 1930 (46 Stat. 590, 701), entitled "An Act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes," the United States Tariff Commission has investigated the differences in costs of production of, and all other facts and conditions enumerated in said section with respect to, boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon, or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, and boots and shoes or other footwear, wholly or in chief value of india rubber, not specially provided for, being wholly or in part the growth or product of the United States, and of and with respect to like or similar articles wholly or in part the growth or product of the principal competing countries;

\*          \*          \*          \*          \*          \*          \*

Now, therefore, I, Herbert Hoover, President of the United States of America, do hereby approve said report and proclaim that the rate of duty shown by said investigation to be necessary to equalize such differences, within the limit provided in said section 336, on boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, is 35 per centum ad valorem based upon the American selling price as defined in section 402(g) of said act of boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, manufactured or produced in the United States; and that the rate of duty shown by said investigation to be necessary to equalize such differences, within the limit provided in said section 336, on boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, is 25 per centum ad valorem based upon the American selling price of boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, manufactured or produced in the United States.

\*          \*          \*          \*          \*          \*          \*

At the trial of this matter, there was introduced on behalf of the importer, the testimony of a Mr. Leander, and the receipt in evidence of the following exhibits:

Plaintiff's exhibit 1—a shoe, manufactured by U.S. Rubber Co., designated U.S. Ked "Rober," representing children's sizes 5 through 12, used by the appraiser as the basis for appraisement.

Plaintiff's exhibit 2—a shoe, manufactured by U.S. Rubber Co., designated U.S. Ked "Rober," representing youths' sizes 12½ through 3, used by the appraiser as the basis for appraisement.

Plaintiff's exhibit 3—an imported shoe representative of the shoes in question in children's sizes 5 through 12.

Plaintiff's exhibit 4—an imported shoe representative of the shoes in question in youths' sizes 12½ through 3.

Plaintiff's exhibit 5—an official sample of the imported shoe.

Plaintiff's exhibit 6—an official sample of the imported shoe.

Plaintiff's exhibit 7—an official sample of the imported shoe.

Plaintiff's exhibit 8—a shoe representative of children's sizes 5 through 12, manufactured by the Rubber Corp. of California.

Plaintiff's exhibit 9—a shoe representative of youths' sizes 12½ through 3, manufactured by the Rubber Corp. of California.

Plaintiff's collective exhibit 10 consists of a pricelist, effective May 1, 1956, and a pricelist, effective January 1, 1958, of the Rubber Corp. of California.

Counsel for the respective parties stipulated to the effect that the appraiser based his appraisement on the American selling price of plaintiff's exhibits 1 and 2, which prices were then $1.95, less 2 per centum, packed, and $2.10, less 2 per centum, packed, respectively.

The testimony of Mr. Leander, manager of the shoe department of Auge & Frese, a department store, was to the effect that his duties included the purchasing of both foreign and domestic merchandise; that he had purchased rubber-soled shoes with canvas uppers from the Japanese exporter, the Rubber Corp. of California, and the U.S. Rubber Co.; that the pricelist, effective May 1, 1956, in plaintiff's collective exhibit 10, was in the office of Auge & Frese when he assumed his duties with that firm; that the pricelist, effective January 1, 1958, of plaintiff's collective exhibit 10, was received by him through the mail; that he had never paid more than the prices indicated in the pricelists contained in plaintiff's collective exhibit 10, but that, on occasion, he had purchased at a lower figure on "a special deal"; that he has had no experience in the manufacture of such shoes. The witness also testified as to the comparative characteristics of the Japanese shoe involved herein, the U.S. Keds used as a basis of appraisement, and those of the Rubber Corp. of California. At the conclusion of his comparison of the U.S. Keds and those of the Rubber Corp. of Cali-

fornia, he concluded, "Actually, the basic construction of the two shoes are very similar."

The trial court, in sustaining the appraiser's action, made the following statements:

All that is required for a valid appraisement of imported merchandise on the basis of American selling price is that the domestic article or articles upon which appraisement is predicated be "like or similar" to the goods imported. If the merchandise used by the appraiser for valuation purposes meets that test, then, the appraiser's action must be upheld. Whether or not one domestic article is "more" similar to an imported article than another domestic article used as the basis of appraisement must, of course, be determined by the record in each particular case. Of course, if there is such a disparity between the domestic article used as the basis of appraisement and the imported goods so as to render the designation "similar" inapplicable to the domestic article, then, the appraiser's action in using such domestic article for valuation purposes on the basis of American selling price is improper. I am of opinion that the record in the case at bar establishes that the shoes selected by the appraiser (plaintiff's exhibits 1 and 2) as the basis for his appraisement are similar to the imported shoes (plaintiff's exhibits 5, 6, and 7) and that the appraiser's action in this case must be sustained. There is not such a disparity between the domestic articles and the imported shoes as to negative a finding of "similarity" as applied to the domestic footwear. * * *

In view of the finding above noted that the domestic shoes used as the basis of appraisement were "similar" to the imported shoes for valuation purposes, I deem it unnecessary to decide whether on the record here presented the plaintiff has sustained the burden of proof imposed upon it under the statute of establishing an American selling price for the shoes which it claims should be taken as the basis of appraisement (plaintiff's exhibits 8 and 9).

In well-prepared briefs of both parties and that of *amicus curiae*, the issues involved in this case have been clearly presented to the court. Counsel for appellant relies upon the decision of this court in the case of *Hoyt, Shepston & Sciaroni* v. *United States*, 38 Cust. Ct. 741, A.R.D. 74. Counsel for appellant, before quoting at length from the *Hoyt, Shepston & Sciaroni* case, *supra*, acknowledged, with appropriate reference to the decision, that the court therein was not concerned with comparative similarity and did not undertake to state any views in connection therewith. The *Hoyt, Shepston & Sciaroni* case, *supra*, involved canned clams which were appraised on the basis of the American selling price of certain New England canned clams. The appellant therein admitted that the basis of American selling price was proper but claimed that a California canned clam was a *like* article and that a *like* article should be preferred to a *similar* article. A stipulation entered into by and between the parties established that the California canned clams were identical to the merchandise at bar. Accordingly, the court found that the value of the California canned clams should have been used in determining the American selling price, since a *like* article must be preferred over a *similar* article.

The record in the instant case does not establish such a situation. In fact, appellant's witness testified, after comparing plaintiff's exhibits 1 and 2 with plaintiff's exhibits 8 and 9, the footwear manufactured by the U.S. Rubber Co., and the Rubber Corp. of California, respectively, that the basic construction of the two shoes was very similar. An examination of the physical exhibits also establishes a striking similarity in appearance. Hence, the question at this point does not involve "like" and "similar" articles. At best, it would appear from the record herein that the footwear produced by the two American producers and the imported article are similar.

The basic contention of appellant is that exhibits 8 and 9, the footwear manufactured by the Rubber Corp. of California, is more similar to the imported merchandise than the footwear used by the appraiser, exhibits 1 and 2, and, therefore, should have been used as a basis for appraisement. In cases involving valuation, there is, by law,[1] a presumption of correctness attaching to the action of the appraiser. The determination by the appraiser that the imported footwear is "like or similar" to a domestically produced shoe is an act of appraisement. Accordingly, this action of the appraiser is presumed to be correct and carries with it, as an adjunct, that the appraiser fully conformed with all the requirements necessary to make a valid appraisement, i.e., he has investigated the market for rubber-soled, canvas-top shoes in the United States and found exhibits 1 and 2 to be "like or similar" to the imported shoe. In addition to this, appellant has stipulated the values used by the appraiser.

In support of its position, appellant contends that the comparative description of the construction of the footwear establishes that exhibits 8 and 9 are more similar to the imported shoe than exhibits 1 and 2. Appellant also contends that the receipt of collective exhibit 10, the pricelist, satisfactorily establishes the merchandise to be freely offered for sale. Appellee and *amicus curiae* contend there is a failure of proof on the part of the appellant and, therefore, the use of exhibits 1 and 2 by the appraiser in ascertaining the American selling price of the imported shoe is presumptively correct.

In cases involving American selling price, there are four basic requirements for appraisements and an alternative basis which is set forth, *infra*, as (5). It is necessary to establish that the merchandise is (1) freely offered for sale for domestic consumption to all purchasers, (2) in the principal market of the United States, (3) in the ordinary course of trade, (4) in the usual wholesale quantities in such market; or (5) at the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption, in the ordinary course

[1] 28 U.S.C. § 2633.

of trade and in the usual wholesale quantities, at the time of exportation of the imported article. See *United States* v. *G. Gennert, Inc.*, 22 C.C.P.A. (Customs) 374, T.D. 47388; *Jno. G. McGiffin* v. *United States*, 38 Cust. Ct. 609, Reap. Dec. 8767.

The right to introduce pricelists is permitted by law, 28 U.S.C. section 2633, and, therefore, the receipt of said documents is permissible. However, the weight to be given the pricelists is a matter to be determined by the court. The record herein establishes that the pricelist (collective exhibit 10), effective May 1, 1956, was in the office of the employer of the witness when the witness was first employed, and the pricelist effective January 1, 1958, was received in the mail by the witness while he held his present position. The fact that he purchased at no more than the prices set forth on the pricelists and at times purchased at less than the prices set forth on the lists is insufficient to establish the necessary factors for use of the lists in appraisement. The witness was not employed by the Rubber Corp. of California and, consequently, did not nor could not testify as to whether the pricelists were sent out as a free offering to all purchasers. It might very well be that collective exhibit 10 is a wholesale pricelist for retailers and that jobbers or other types of business may purchase at a different price. The court, of course, may not assume any facts not in evidence, and the evidence adduced herein is, in our opinion, lacking and does not establish that the merchandise covered by collective exhibit 10 is freely offered for sale for domestic consumption to all purchasers; in the principal market of the United States; in the ordinary course of trade; and in the usual wholesale quantities in such market, as required by law.

Accordingly, appellant has failed to overcome the presumption of correctness attaching to the action of the appraiser. In view of this conclusion, we deem it unnecessary to consider the question of comparative similarity.

Upon the foregoing considerations, we make the following findings of fact:

1. That the involved merchandise consists of rubber-soled shoes with canvas uppers in children's sizes 5 through 12 and youths' sizes 12½ through 3, exported from Japan between December 1956 and May 1957.

2. That the merchandise was appraised on the basis of American selling price, as provided in section 402(g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, in accordance with a Presidential proclamation reported in 63 Treas. Dec. 232, T.D. 46158, issued under the authority of section 336 of the Tariff Act of 1930.

3. That, on or about the dates of exportation, there was an American selling price, as defined in section 402(g) of the Tariff Act of 1930, as amended *supra*, for rubber-soled shoes with canvas uppers, in children's sizes 5 through 12, manufactured and sold in the United States by the U.S. Rubber Co. at $1.95, less 2 per centum, packed.

4. That, on or about the dates of exportation, there was an American selling price, as defined in section 402(g) of the Tariff Act of 1930, as amended, *supra*, for rubber-soled shoes with canvas uppers, in youths' sizes 12½ through 3, manufactured and sold in the United States by the U.S. Rubber Co. at $2.10, less 2 per centum, packed.

5. That appellant has not established that the footwear sold by the Rubber Corp. of California was freely offered for sale in the principal market of the United States, in the ordinary course of trade, and in the usual wholesale quantities, as required by law.

6. That the domestic shoes manufactured by the U.S. Rubber Co., which were used as the basis of appraisement, are "similar" to the imported shoes for the purpose of appraisement, under section 402(g) of the Tariff Act of 1930, as amended, *supra*.

The court, therefore, concludes as matter of law:

1. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

2. That the proper basis for appraisement of the merchandise under consideration is the American selling price, as such value is defined in section 402(g) of the Tariff Act of 1930, as amended, *supra*.

3. That such statutory values are, in each instance, the appraised values.

The decision and judgment of the trial court, therefore, are affirmed.

Judgment will be entered accordingly.