(Reap. Dec. 10572)

STANLEY WEINER *v.* UNITED STATES

Entry No. 22111.

(Decided July 29, 1963)

Plaintiff not represented by counsel.

*John W. Douglas,* Assistant Attorney General (*Morris Braverman* and *Samuel D. Spector,* trial attorneys), for the defendant.

WILSON, Judge: This is an appeal from a finding of value by the United States appraiser of merchandise on importations of certain footwear, exported from Hong Kong on April 25, 1959.

The merchandise in question was appraised on the basis of American selling price, section 402(g) of the Tariff Act of 1930, as amended, as follows: Canvas oxford shoes with rubber soles in children's sizes, $2.10 per pair; in junior sizes, $2.25 per pair; in women's sizes, $2.50 per pair; in men's sizes, $2.75 per pair, and on certain canvas basketball boots with rubber molded soles as follows: In youth sizes, $3.20 per pair; in boy sizes, $3.30 per pair; in men's sizes, $3.40 per pair, all of the above merchandise less 2 per centum discount, packed.

Plaintiff, in this case, does not dispute the basis of appraisement, but contends, in effect, that the appraised values were erroneous, in that they were predicated upon merchandise "far superior" to that

imported and that certain domestic shoes, allegedly sold at lower prices, were more "like or similar" to the imported footwear as a basis of comparison for valuation purposes (R. 21). In this connection, there was offered and received in evidence a letter (plaintiff's exhibit 1) addressed to plaintiff's company by one of the domestic purchasers of merchandise such as here imported, the pertinent parts of which read as follows:

To whom it may concern:

I am one of the purchasers of the sneakers and gym shoes that were purchased by Mr. Stanley Weiner and imported and sold to us. * * *

* * * We negate the fact that the most competitive sellers would be U.S. Rubber and Co. and Hood Rubber Company such as the government claims.

Randolph Manufacturing Company and Endicott Johnson Company are the proper most competitive sellers of similar products and doing the majority sales in said products. In fact, the shoes we purchased do not even have arch supports in them, and they were not satisfactory.

*　　　*　　　*　　　*　　　*　　　*　　　*

Plaintiff also claims that certain lower discounts should have been allowed than those permitted by the Government on appraisement— that "the customary discounts of American concerns to large users such as I personally sold * * * as per invoices exhibited * * * were 18 per cent and 5 off, and 10 off, and even the smallest individual user was given discounts of 8 per cent and then 2 off." (R. 8.)

Certain pairs of shoes, part of the merchandise here under consideration, were received in evidence as plaintiff's exhibits 3 and 4 (R. 10–11). Plaintiff also introduced in evidence a pricelist of Bata Shoe Co., Belcamp, Md., for "1959 CANVAS FOOTWEAR," and also a pricelist of Randolph Mfg. Co., Randolph, Mass., for certain tennis footwear and basketball shoes (plaintiff's collective exhibit 5), together with a pricelist of Endicott Johnson, issued August 1, 1959, for rubber and canvas footwear (plaintiff's exhibit 6). A 1959 pricelist of La Crosse Rubber Mills Co., La Crosse, Wis., was also received in evidence (plaintiff's exhibit 9, R. 14). It appears to be the contention of the plaintiff that appraisement of the involved merchandise should be predicated upon the value or the price at which footwear allegedly similar to the imported merchandise was sold by the Randolph Manufacturing and Endicott Johnson companies. Plaintiff further introduced in evidence certain domestic shoes made by Endicott Johnson claimed to be "like or similar" to the footwear here under consideration or of better quality than the imported shoes (plaintiff's exhibits 7 and 8, R. 13). The pricelists above referred to, and the sample imported shoes and those of domestic manufacture, will be hereinafter discussed, insofar as the determination of the present issue requires.

Relevant to the present inquiry is the testimony of the plaintiff as follows:

By Mr. Spector:

X Q. This merchandise that you imported into the United States, were they cotton uppers? Did it consist of cotton uppers?

Judge Wilson: Was the upper part of the shoe cotton?—A. I'm no expert, but I would say they're both alike, these two shoes.

X Q. I'm asking you, is this made of cotton, the upper?—A. I think so. I'm no expert. It's the same fabric that this shoe is.

X Q. I'm not interested in this shoe. I'm interested in the shoe that you brought in. Is that what you brought in?—A. This is what I brought in.

X Q. Is that a cotton upper?—A. I think so.

X Q. Is that a rubber sole?—A. Some form of rubber. I'm no expert.

X Q. Is it a sneaker?—A. It's a sneaker. It's the same as this shoe.

Mr. Spector: All right. That's all. [R. 24–25.]

Section 402a(g), Tariff Act of 1930, as amended, is as follows:

(g) American Selling Price.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article. [19 U.S.C. § 1402(g).]

The cases have laid down standards for determining similarity, for purposes of American selling price valuation. *Japan Import Co.* v. *United States*, 24 CCPA 167, T.D. 48642. Subsequently decided cases frequently cite *Japan Import Co.* v. *United States, supra; United States* v. *Japan Import Co., Inc.*, 2 Cust. Ct. 926, Reap. Dec. 4568; *Mutual Supply Co.* v. *United States*, 5 Cust. Ct. 614, Reap. Dec. 5062; *Hoyt, Shepston & Sciaroni* v. *United States*, 38 Cust. Ct. 741, A.R.D. 74; and *Geo. S. Bush & Co., Inc.* v. *United States*, 43 Cust. Ct. 577, Reap. Dec. 9563, affirmed on review, *Id.* v. *Id.*, 46 Cust. Ct. 754, A.R.D. 126.

In the earlier of the two *Japan Import* cases, in which final decision was by our appeals court, the imported merchandise was canvas-topped shoes, rubber soled, which were imported from Japan. They were valued by the appraiser at the American selling price of a domestic canvas-topped shoe, rubber soled, of the type commonly known as "sneakers." The imported shoes sold in the United States at wholesale for 35 cents to 50 cents a pair; the domestic shoes at 69 cents a pair. The shoes were similar in appearance, and in weight and style. However, there was testimony that the domestic shoe was

of a better quality, in several respects, than the imported shoe. For instance, the domestic shoe had a ventilating feature, the insoles fitted more closely than did the insole of the Japanese shoe, the cross-corrugations on the soles of the American shoe were better, and the soles were more flexible in the American shoe than in the Japanese shoe. Both shoes were sold in the same kinds of stores and to the same class of customers. Both were adapted to the same uses and purposes. Our appeals court sustained this court, which held that the domestic shoe and the Japanese shoe were similar, for purposes of appraisement of the imported article at the American selling price of the domestic article.

In the *Bush* case, *supra*, the second division of this court, sitting in appellate term, quoted with approval the opinion of the trial judge on the problem of proof, as follows:

> All that is required for a valid appraisement of imported merchandise on the basis of American selling price is that the domestic article or articles upon which appraisement is predicated be "like or similar" to the goods imported. If the merchandise used by the appraiser for valuation purposes meets that test, then, the appraiser's action must be upheld. Whether or not one domestic article is "more" similar to an imported article than another domestic article used as the basis of appraisement must, of course, be determined by the record in each particular case. Of course, if there is such a disparity between the domestic article used as the basis of appraisement and the imported goods so as to render the designation "similar" inapplicable to the domestic article, then, the appraiser's action in using such domestic article for valuation purposes on the basis of American selling price is improper. * * *

In the second *Japan Import Co., Inc.*, case, *supra*, in which the imported merchandise consisted of rubber-soled footwear, with paper uppers that were cotton lined, the second division of this court, sitting in appellate term, defined the conditions for determining whether an imported article is like or similar to a particular domestic article, as follows:

> It is evident from a study of the authorities that the factors to be considered in determining the question of whether an imported article is like or similar to a domestic article which may be taken as the basis of appraisement under said section 336 are (1) similarity of material; (2) commercial interchangeability; (3) adaptability to the same use; and (4) competitive character. [P. 933.]

A party appealing for reappraisement not only has the burden of establishing that the appraiser's finding of value was erroneous, but it must also establish that its claimed values are correct.

As appears from the record and the testimony in this case, the imported shoes consist of cotton uppers with rubber soles. Further, it has not been controverted by any evidence on the plaintiff's part that they are not used for the same purposes as are the domestic shoes selected by the appraiser as the basis of appraisement. It would appear, therefore, that in these two respects, namely, similarity of mate-

rial and of use, the test of similarity between the imported footwear and that selected by the appraiser has been met.

A visual examination of the imported shoes and the footwear offered by the plaintiff as a basis of comparison show, without substantial difference, similarity of material and construction. However, it was plaintiff's burden, in the first instance, to establish that the imported footwear and that used by the appraiser as the basis of comparison are "dissimilar" for valuation purposes. This he has failed to do.

Plaintiff offered in evidence certain pricelists of "other" domestic footwear producers in substantiation of its claimed prices for merchandise "like" or "similar" to that imported. However, pricelists in and of themselves are not substantial evidence to establish the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, "at which such article is *freely offered* for sale for domestic consumption to *all purchasers* in the principal market of the United States, in the *ordinary course of trade* and in the *usual wholesale quantities* in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article" within the American selling price valuation formula. [Italics supplied.] All elements encompassed within the definitions therein consonant with values claimed by a party appealing for reappraisement must be proven in order to establish such claimed values. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 CCPA 36, T.D. 43324; *United States* v. *Malhame & Co.*, 19 CCPA 164, T.D. 45276; *United States* v. *Gane and Ingram, Inc.*, 24 CCPA 1, T.D. 48264. The proof in the present case is lacking in this respect.

It must be borne in mind that appraisement of the imported merchandise was predicated upon certain domestic footwear other than that offered by the plaintiff as a basis of comparison for valuation purposes.

The appraiser is presumed to have found that the imported footwear was commercially interchangeable and competitive with the articles used by him as the basis of appraisement. There is nothing in the record to rebut the presumption attaching to this finding by the appraiser, and there are here no evidentiary facts as to commercial interchangeability and competition of the imported items and those used for comparison purposes by the appraiser so as to establish on the plaintiff's part that the two types of footwear, viz, that imported and that upon which appraisement was based, are "dissimilar."

Plaintiff attempts to prove by statements of a purchaser of its merchandise (plaintiff's exhibit 1) that the Randolph Mfg. Co. and Endicott Johnson "are the proper most competitive sellers of similar products." However, as was stated in the case of *Albert F. Maurer Co.* v. *United States*, 47 Cust. Ct. 560, 573, Reap. Dec. 10130:

* * * Mere opinion evidence of an ultimate reasoned conclusion to be reached by the court, is not enough. * * *

The statements contained in plaintiff's exhibit 1, purporting to have a bearing upon the determination of the value of the merchandise here under consideration, likewise are mere expressions of opinion and have no probative value. Plaintiff has failed to overcome the presumption that the appraiser correctly found the imported shoes and the domestic footwear upon which appraisement was predicated to be "like" or "similar," within the intent of Congress under section 336 of the Tariff Act of 1930, as amended, and has further failed to establish that the appraised values are not the correct ones for the merchandise.

On the basis of the record here presented, I find that the evidence adduced on the part of the plaintiff is not competent to overcome the presumptively correct appraised values. Accordingly, I conclude that the values returned by the appraiser are the correct values.

Judgment will be entered accordingly.